# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

**R.J. O'Brien & Associates, LLC,**

             **Plaintiff,**

  **v.**

**Robert Williamson,**

             **Defendant.**

Civil Action No. 14-cv-02715

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff R.J. O'Brien & Associates, LLC, complains against the defendant Robert Williamson as follows:

### Nature of the Action

1. This is an action to enforce contractual and fiduciary obligations owed to the plaintiff R.J. O'Brien & Associates, LLC, by one of its former employees, defendant Robert Williamson.

### Parties

2. Plaintiff R.J. O'Brien & Associates, LLC (RJO), is the oldest and largest independent futures brokerage and clearing firm in the United States. Its principal place of business is located at 222 S. Riverside Plaza, in Chicago, Illinois. RJO's sole member is RJO Holdings, Corp., a Delaware corporation whose principal place of business is likewise located at 222 S. Riverside Plaza, Chicago, Illinois. RJO is a citizen of Illinois.

3. Defendant Robert Williamson is a citizen of New Jersey and an experienced executive who formerly worked for RJO.

4. Non-party Wells Fargo & Company (Wells Fargo) is a very large nationwide provider of banking, mortgage, investing, credit card, insurance and consumer and commercial financial services. It does business throughout the United States.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over this matter pursuant to 28 USC § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

6. The defendant consented to personal jurisdiction in this state and venue in this Court in the agreements at issue in this case, the Confidentiality and Non-Solicitation Agreement and the Associated Person Agreement, which are described below. Venue is proper in this judicial district pursuant to 28 USC § 1391.

## Facts

7. On March 8, 2012, RJO offered to hire Williamson as its Vice President for Execution Services, and on March 12, 2012, Williamson accepted RJO's offer. (Copies of RJO's offer of employment and Williamson's acceptance are attached as **Exhibit A**.).

8. In exchange for his offer of employment at RJO and additional consideration detailed below, Williamson was required to – and did – agree to several documents that imposed obligations on him in connection with his employment.

9. The first of these additional documents was a Confidentiality and Non-Solicitation Agreement, which he signed on April 7, 2012. (A copy of this Agreement is attached as **Exhibit B**.). In consideration for Williamson's agreement to be bound by the Confidentiality and Non-Solicitation Agreement, RJO hired Williamson, provided him with substantial compensation and fringe benefits, and allowed him access to RJO's confidential information.

10. In the Confidentiality and Non-Solicitation Agreement, Williamson agreed to the following restrictive covenants:

- Paragraphs 2(a) and (b) require Williamson to preserve the confidentiality of RJO's confidential information both during and after his employment with RJO;

- Paragraph 3 requires Williamson to return all of RJO's property upon the termination of his employment with RJO; and

- Paragraphs 4(a), (b) and (c) prohibit Williamson from soliciting RJO's customers or employees for one year following his departure from the company.

11. Williamson additionally agreed that if he violated the terms of the Confidentiality and Non-Solicitation Agreement, he would be liable "for all damages resulting from such violations or attempted violations, included but not limited to RJO's attorney's fees and court costs incurred in seeking to enforce this Agreement." (Paragraph 6(a)). And, Williamson agreed that "[t]he state courts of Cook County, Illinois and the United States District Court for the Northern District of Illinois shall have the exclusive jurisdiction over and all claims, lawsuits and litigation relating to or arising out of this Agreement." (Paragraph 9).

12. The second of the additional documents was an Associated Person Agreement, which Williamson signed on April 17, 2012. (A copy of this Agreement is attached as **Exhibit C**.)

13. In the Associated Person Agreement, Williamson agreed to the following restrictive covenants:

- Paragraph 15 requires Williamson to "hold the Confidential Information in strictest confidence, take all reasonable precautions to prevent the inadvertent disclosure of the Confidential Information to any unauthorized person, and follow all the Company's policies protecting the Confidential Information" and prohibits him from using, copying, divulging or otherwise disseminating or disclosing any Confidential Information, or any portion thereof, to any unauthorized person; and

- Paragraph 16 prohibits Williamson, during his employment and for one year thereafter, from soliciting for employment, hiring or engaging, or attempting to

3

solicit, hire or engage, any RJO employee who was employed by RJO within six (6) months prior to the solicitation or hire.

14. In consideration for the restrictive covenants in the Associated Person Agreement, RJO agreed to (i) sponsor Williamson to become registered with the Commodity Futures Trading Commission as an Associated Person of RJO, which would enable Williamson to solicit the accounts of new customers and solicit registered introducing brokers to introduce customer accounts to RJO, (ii) provide Williamson with access to RJO's confidential and proprietary information, including information concerning its business affairs, customer and pricing lists, sales strategies and practices, and employee details, and (iii) employ Williamson as its Vice President, Execution Services and provide him with substantial compensation and fringe benefits.

15. Williamson acknowledged and agreed in Paragraph 19 of the Associated Person Agreement that if he breached the agreement, "money damages alone would not provide adequate relief to [RJO] for the harm incurred" and that RJO "shall be entitled to temporary, preliminary, and permanent injunctive relief restraining [Williamson] from committing or continuing to commit any breach, without the need to post a bond" and that he would be "liable for the amount of reasonable attorneys' fees incurred by [RJO] if [he] is found by a court of competent jurisdiction in a final order to have breached any provision of Paragraphs 15, 16 and 17 of this Agreement." Williamson further agreed that in the event of a dispute related to the Associated Person Agreement, the parties would "submit to the exclusive jurisdiction of the federal or state courts located in Cook County, Illinois," and he would "waive any objection to personal jurisdiction or venue in such jurisdiction . . . ." (Paragraph 13).

16. RJO took steps to protect the confidentiality of its information and trade secrets by—among other things—including policies in its Employee Handbook to prevent their disclosure, such as the following:

- Page 13, subsection 11, which prohibits employees "from disclosing trade secrets or confidential Company information, or violating the policy on Conflicts of Interest"; and

- Page 14, which provides that (i) the "internal business affairs of the Company, particularly confidential information, represent Company assets that each employee has a continuing obligation to protect," (ii) "information designated as confidential may not be discussed with anyone outside the organization and may be discussed within the organization only on a 'need to know' basis," (iii) "employees have a responsibility to avoid unnecessary disclosure of non-confidential internal information about RJO, its employees, its customers, and its suppliers," and (iv) "[e]mployees are prohibited from attempting to obtain confidential information for which they have not received authorization."

On April 5, 2012, Williamson was provided with a copy of this Handbook and he signed a statement accepting it and agreeing to abide by its provisions. (A copy of this acceptance is attached as **Exhibit D**.)

17. RJO provided Williamson with access to RJO's proprietary business processes. During the course of his employment with RJO, Williamson also had access to and utilized RJO's confidential and proprietary information, including information concerning its business affairs, customer and customer trading history, pricing lists, cost information, operational procedures, and employee details.

18. On or about April 5, 2013, Williamson resigned from RJO and went to work for Wells Fargo.

19. On information and belief, after beginning work at Wells Fargo, Williamson used confidential information he had learned while working at RJO to target RJO employees for hiring on behalf of Wells Fargo.

5

20. Within a year of terminating his employment with RJO, Williamson began soliciting RJO employees to leave its employment in favor of employment at Wells Fargo, an RJO competitor.

21. One such employee Williamson solicited, Janet Mirasola, was a key RJO employee who is in possession of valuable trade secrets and other confidential information regarding RJO's customers, customer trading history or tendencies, business methods, pricing lists, cost information, and other confidential and valuable information. Mirasola thereafter resigned her position at RJO and was hired at Wells Fargo.

### Count I – Breach of Contract
### (Confidentiality and Non-Solicitation Agreement)

22. RJO realleges paragraphs 1-21 against the defendant.

23. The Confidentiality and Non-Solicitation Agreement described in paragraphs 9 through 11 of this Complaint is a legally enforceable contract.

24. RJO performed all of the obligations imposed on it by that contract or was ready, willing and able to do so.

25. Williamson breached that contract by using RJO's confidential information regarding its employees, their practice areas, profitability, and other personnel information to target RJO employees for solicitation on behalf of Wells Fargo.

26. Williamson additionally breached that contract by soliciting RJO employees for employment by Wells Fargo within twelve months of the termination of his employment with RJO.

27. As a result of Williamson's breach of contract, RJO was damaged by disruption of its provision of services, disclosure of its confidential information to a competitor, and a loss of profits.

### Count II – Breach of Contract
### (Associated Person Agreement)

28. RJO realleges paragraphs 1-21 against the defendant.

29. The Associated Person Agreement described in paragraphs 12 through 15 of this Complaint is a legally enforceable contract.

30. RJO performed all of the obligations imposed on it by that contract or was ready, willing and able to do so.

31. Williamson breached that contract by using RJO's confidential information regarding its employees, their practice areas, profitability, and other personnel information to target RJO employees for solicitation on behalf of Wells Fargo.

32. Williamson additionally breached that contract by soliciting RJO employees for employment by Wells Fargo within one year of the termination of his employment with RJO.

33. As a result of Williamson's breach of contract, RJO was damaged by disruption of its provision of services, disclosure of its confidential information to a competitor, and a loss of profits.

### Prayer for Relief

WHEREFORE, plaintiff R.J. O'Brien & Associates, LLC, respectfully requests that the Court:

A. Enter judgment in RJO's favor on each cause of action set forth above;

B. Award RJO monetary damages in an amount to be proven at trial, but no less than $75,000, for the economic injury it has sustained as a consequence of the defendant's actions, including attorneys' fees and court costs; and

C. Award RJO such equitable relief as is just and proper.

### Jury Demand

In accordance with Rule 38 of the Federal Rules of Civil Procedure, the plaintiff respectfully demands a jury trial of all claims triable to a jury in this action.

Dated: April 15, 2014

                    R.J. O'Brien & Associates, LLC

                    By: /s/ Sean B. Crotty
                        One of its attorneys

                        Sean B. Crotty (IL 6242730)
                        Eugene J. Schiltz (IL 06181363)
                        Elizabeth E. Richert (IL 6275764)
                        COLEMAN LAW FIRM
                        77 West Wacker Drive, Suite 4800
                        Chicago, Illinois 60601
                        312-444-1000