IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| R.J. O'BRIEN & ASSOCIATES, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 C 2715 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| ROBERT WILLIAMSON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff R.J. O'Brien & Associates, LLC has brought a two count complaint against its former employee, Robert Williamson, alleging breach of a confidentiality and non-solicitation agreement (Count I) and breach of an Associates Person Agreement (Count II). In general, the complaint alleges that after working for plaintiff for one year, defendant resigned, went to work for a competitor, and began to solicit plaintiff's employees to defect to defendant's new employer, in violation of certain post-employment restrictive covenants contained in defendant's employment contracts. Defendant has moved for summary judgment on both counts, arguing that: (1) there is a lack of adequate consideration supporting the restrictive covenants rendering them invalid; and (2) there is no evidence that defendant solicited any of plaintiff's employees or disclosed any confidential information. For the reasons described below, defendant's motion for summary judgment is denied.

**BACKGROUND**[1]

Plaintiff is a large, independent futures brokerage and clearing firm. On March 9, 2012, plaintiff offered to employ defendant as part of its 24-Hour Desk Team, which executes trades on behalf of commodity funds and other brokers twenty-four hours a day. Plaintiff and defendant agreed to a commission structure by which the group would share in 50% of all revenue and expenses after 20% payment of net commissions to the group's introducing broker.

The offer was contingent on defendant executing plaintiff's Confidentiality and Non-Solicitation Agreement ("Confidentiality Agreement") and an Associated Person Agreement ("AP Agreement"), which included certain limited restrictive covenants. In return for signing the AP Agreement, defendant offered plaintiff, among other things, an annual draw of $180,000.

Defendant accepted plaintiff's offer and signed the Confidentiality Agreement on April 7, 2012, and the AP Agreement on April 17, 2012. In the Confidentiality Agreement, defendant agreed to preserve the confidentiality of plaintiff's confidential information during and after his employment with plaintiff. Defendant also agreed not to solicit plaintiff's customers or employees for one year following his departure from defendant.

The AP Agreement contains similar provisions, requiring defendant to hold plaintiff's confidential information in strictest confidence, and prohibiting defendant "during his employment and for one year thereafter from soliciting for employment, hiring or engaging, or

---

[1]The background section is taken from the parties' L.R. 56.1 Statements. For some unknown reason, neither party presented a summary of the facts in their briefs. Such practice is both ineffective and irresponsible. Cleveland v. Prairie State College, 208 F.Supp.2d 967, 972-73 (N.D. Ill. 2002).

attempting to solicit, hire or engage, any [plaintiff] employee who is employed by [plaintiff] within six (6) months prior to the solicitation or hire."

Around eight months after defendant joined plaintiff in April 2012, his friend Alasdair McBarnet joined Wells Fargo Securities ("Wells Fargo") to start a new Futures Commodity Merchant Group ("FCM"). While in talks with Wells Fargo, McBarnet began talking to defendant about joining him at Wells Fargo. By December 2012, it appeared that defendant would move to Wells Fargo as soon as McBarnet was ready to hire him. Defendant then began talking to other members of plaintiff's 24-Hour Desk Team about moving to Wells Fargo. Members of the team have testified that defendant stated that he wanted the entire 24-Hour Desk Team to move as a group to Wells Fargo. Defendant organized a meeting at a steak house in Chicago between McBarnet and members of plaintiff's 24-Hour Desk Team, in which McBarnet explained his business plan. After the meeting, defendant remained a big proponent of a move. Even after the Team decided not to move, he continued to talk to the members individually.

Defendant resigned from plaintiff on April 5, 2013, to join Wells Fargo. Five days later he emailed the 24-Hour Desk Team members from his Wells Fargo email that: "YOU CAN SEND YOUR RESUME TO ME AT THE ADDRESS BELOW! LOL."

While at plaintiff, defendant was friends with Hilton Sheng. Sheng sat across from Janet Mirasola on the trading floor. Defendant would occasionally cross the floor to speak with Sheng. As the time when defendant left plaintiff neared, the frequency of these visits increased. Defendant did not know Mirasola before joining plaintiff, but learned that she was a high producer on the London Metals Exchange.

After leaving plaintiff, defendant called Sheng to indicate that he and McBarnet were interested in hiring Sheng and Mirasola. Around July 10, 2013, defendant contacted Sheng to set a meeting with Sheng, Mirasola, defendant and McBarnet. Over the next few days defendant contacted Sheng numerous times by phone, email and text message to coordinate the meeting. Sheng believed the purpose of the meeting was to explore a move by Sheng and Mirasola to Wells Fargo. At the July 15, 2013, meeting, McBarnet indicated that he was looking to hire Sheng and Mirasola. The following day, defendant called Sheng to inquire about Mirasola's and Sheng's rough production numbers.

Nine days later, on July 24, 2013, Mirasola met with George Simonetti, McBarnet's and defendant's boss, to discuss her potential employment as head of a London Metals Exchange Group at Wells Fargo. On November 4, 2013, Mirasola told Wells Fargo that she was worried that plaintiff was going to file for a membership to the London Metals Exchange, and that she had begun the process of breaking the news of her impending move to Wells Fargo to the employees going with her. Two days later, Wells Fargo sent Mirasola a formal offer letter.

By November 18, 2013, plaintiff had informed Mirasola that she was turned down for an Executive Vice- President position she had wanted. Instead, plaintiff offered her a position as head of Global LME Sales. She rejected the offer, resigned, and joined Wells Fargo on December 2, 2013.

## DISCUSSION

Defendant has moved for summary judgment on both counts. Summary judgment is appropriate when the moving papers and affidavits show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

4

56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmovant must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenebaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the evidence as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient, there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

Defendant first argues that both the Confidentiality Agreement and the Restrictive Covenants contained in the AP Agreement are invalid for lack of adequate consideration. "It is a basic tenet of contract law that in order for a promise to be enforceable against the promisor, the promisee must have given some consideration for the promise." Vassilkovstka v. Woodfield Nissan, Inc., 358 Ill.App.3d 20, 26 (1st Dist. 2005).[2] Consideration is traditionally relatively easy to demonstrate, with courts generally looking only to its existence, not its adequacy. Wagner v. NutraSweet Co., 95 F.3d 527, 532 (7th Cir. 1996). In the context of post-employment restrictive covenants, however, "courts depart from that rule and analyze adequacy" Bankers

---

[2]The parties agree that Illinois law applies to the instant dispute.

5

Life and Cas. Co. v. Miller, 2015 WL 515965 at *3 (N.D. Ill. Feb. 6, 2015). An illusory promise is not adequate consideration. Id. (Citing Brown and Brown, Inc. v. Mudron, 379 Ill.App.3d 724, 728 (3d Dist. 2008)). "[A] promise of continue employment may be an illusory benefit when the employment is at will." Mudron, 379 Ill.App.3d at 728. Thus, while continued employment alone can be adequate consideration, when, as in the instant case, the employment is at will, it must continue for a "substantial period of time" to be considered adequate. Id.

Defendant argues that for a restrictive covenant to be enforceable, "there must be at least two years or more of continued employment to constitute adequate consideration." Fifield v. Premier Dealer Servs., Inc., 993 N.E.2d 938, 943 (Ill.App. Ct. 2013). Indeed, some Illinois courts have adopted a two year bright line rule. Id.; Prairie Rheumatology Assoc., 24 N.E.3d 58, 62 (Ill. App. Court 2014).

Other courts, however, have rejected the two year bright line rule in favor of considering other factors in determining whether sufficient consideration was given to enforce a restrictive covenant. Such factors include compensation (including raises and bonuses) and the terms of the employee's termination. See Montel Aetnastak, Inc. v. Missen, 998 F.Supp.2d 694, 716 (N.D. Ill. 2014); Bankers Life, 2015 WL 515965 at *3; LKQ Corp. v. Thrasher, 785 F.Supp.2d 737, 742-44 (N.D. Ill. 2011).

The Illinois Supreme Court has not reached the issue. Four federal courts in the Northern District of Illinois have reached the issue, predicting how the Illinois Supreme Court would rule.[3] Judge Holderman predicted and adopted the two year bright line rule. Instant Technology, LLC v. DeFazio, 40 F.Supp.3d 989, 1010 (N.D. Ill. 2014). Judges Castillo, Dow, and Shah have

---

[3] See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

6

rejected the bright line approach and instead employed the fact-specific approach. Montel Aetnastak, 998 F.Supp.2d at 716; Traffic Tech, Inc. v. Kreiter, 2015 WL 9259544 at *5 (N.D. Ill. 2015); Bankers Life, 2015 WL 515965 at *3-4 (N.D. Ill. 2015). In addition, Judge McDade in the Central District of Illinois has performed an extensive analysis of the case law and also concluded that the Illinois Supreme Court would reject the two year bright line rule. Cumulus Radio Corp. v. Olson, 80 F.Supp.3d 900, 905-09 (C.D. Ill. Feb. 13, 2015).

This court agrees with the reasoning of the Montel Aetnastak, Traffic Tech, Bankers Life, and Cumulus Radio decisions and concludes that the Illinois Supreme Court would reject a two year bright line rule in favor of a fact specific test. Two years may be sufficient to find adequate consideration, but it is not always necessary. In reaching this decision the court also finds persuasive Justice Schmidt's dissent in Mudron, in which he points out the difference between the employee being terminated and resigning. As he noted in discussing the case on which the Mudron majority relied, "in Mid-Town [Mid-Town Petroleum Inc. v. Gowen, 243 Ill.App.3d 63 (1993)] the plaintiff "quit" because the consideration failed. The majority here holds that the consideration failed because [the defendant] quit. Big difference." Mudron, 379 Ill.App.3d at 730-31 (Schmidt, J. dissenting).

In the instant case, defendant quit after one year to work for a competitor. Plaintiff did nothing to alter the terms of defendant's employment. Defendant received his commissions due under the employment agreement. In addition he received a generous salary for acting as an AP as well as being sponsored with the Commodities Future Trading Commission and National Futures Association. This sponsorship subjected plaintiff to liability should defendant have

7

violated any rule or commit any trading error.  Thus, the court concludes that the restrictive covenants are not invalid for lack of adequate consideration.

Moreover, as Justice Schmidt noted in his Mudron dissent, "even a peppercorn of consideration is sufficient to support a finding of adequate consideration when one seeks damages at law while more should be required when one seeks equitable relief." Id.  Because plaintiff seeks only damages in the instant case, the court finds that the consideration was adequate.

Defendant next argues that there is no evidence that he solicited any of plaintiff's employees.  This argument is specious at best.  The court's description of the case is taken from defendant's admissions to plaintiff's L.R. 56.1 Statements of Fact not in dispute.  As is evident from that description, there is ample evidence from which a jury could conclude that defendant solicited Mirasola and others to leave plaintiff and join Wells Fargo.  Whether Mirasola made that decision solely because she was not offered the executive vice president position as she testified, or whether she had planned to go to Wells Fargo after meeting with McBarnet and Simonetti is a question of fact not resolvable on summary judgment.  Consequently, the court concludes that there is sufficient evidence of solicitation and defendant's motion for summary judgment is denied.

## **CONCLUSION**

For the reasons discussed above, defendant's motion for summary judgment (Doc. 66) is denied.

**ENTER:**   **March 10, 2016**

_____

**Robert W. Gettleman**
**United States District Judge**